THOMAS SAWYER *versus* EASTERN STEAMBOAT COMPANY.

Upon matters in issue, in which the courts of common law have concurrent jurisdiction with courts of admiralty, if the parties elect the common law remedy, they thereby voluntarily submit to the legal principles and modes of proceeding which prevail in the courts affording that remedy.

The rules of navigation and the usages of the sea are not regarded in our courts of common law jurisdiction as positive in their nature.

The principles that, at common law, apply in cases of collision of carriages traveling upon our highways, apply also to collisions upon navigable waters.

In an action against the owners of a steamer, for collision with a schooner, the Judge was requested to instruct the jury that, "if they should find that the persons in charge of the steamer saw the schooner in season to notify her of their approach, by ringing the bell or blowing the whistle, before the schooner saw the steamer, and, in consequence of neglecting to do so, the collision occurred, then they were in fault, and the defendants should pay the damages, unless they should also find that the vessel was in fault for some other cause :" —

*Held,* that the Judge properly refused to give the requested instruction. —

*Held,* that it is not the right of a party, in cases of this kind, to seize upon one, two, or more of the facts bearing upon the question of fault, and ask the Court to rule upon their weight or effect as evidence.

THIS was an action for damages occasioned to the schooner Hiram by the steamer Admiral.

The presiding Judge instructed the jury as follows : —

That the burden of proof was on the plaintiff to prove the defendants in fault. If the collision was occasioned without fault on either side, a mere accident, the action could not be maintained. If by fault on both sides, it could be maintained, and the damages should be divided. If by fault of the Admiral only, the plaintiff would be entitled to recover for all the damages sustained by him. That it was a rule at sea that a vessel going free must give way to one on the wind; one on the larboard tack gives way to one on the starboard tack; and steamers must give way to sailing vessels. These rules are based upon the simple principle "that the vessel which can alter her course most easily must do so," and they are often qualified by the application of this principle.

Sawyer *v.* Eastern Steamboat Company.

That the jury should find, if they could, from all the evidence, which party was in fault, whether one only, or both, or neither.

After the conclusion of the Judge's charge, the plaintiff's attorney requested the following instructions:—

If the jury find that the persons in charge of the steamer saw the schooner in season to notify her of their approach, by ringing the bell or blowing the whistle, before the schooner saw the steamer, and, in consequence of neglecting to do so, the collision occurred, then they were in fault, and the defendants should pay the damage, unless they find the vessel in fault for some other cause.

But the presiding Judge declined to give the instruction requested, or to say any thing specifically about the duty of the steamer to blow her whistle or ring her bell.

To which rulings and failure to rule, the plaintiff excepted.

There was also a motion for a new trial, on the ground that the verdict was against the weight of evidence.

*F. A. Pike,* for plaintiff, on exceptions.

But a single point is presented by the exceptions, and that is, whether it is ever the duty of a steamer to blow her whistle or ring her bell in running through a thoroughfare in a fog.

The duty of vessels as to collisions in a harbor or a thoroughfare is very different from that in the open sea. They must use extraordinary care while going in the trackway of vessels in the fog. *Steamer Bay State,* 1 Abbott's Adm. R., 235; *Newton* v. *Stebbins,* 10 How., 587.

Vessels have always been obliged to use all means within their power to prevent collisions, such as showing lights, &c. The rule of showing lights has always been strictly enforced. *Indiana,* 1 Abbot's Adm. R., 330, and cases there cited.

The rules for avoiding collisions are based upon the principle that each vessel was bound to do what lay in her power.

The reason of the rule which obliges a vessel to show lights in the night, and of a vessel having the wind free, to avoid another with less advantages, applies *as well to using their means of notifying of their approach.*

There are three predicaments where collisions may occur:—

1. In meeting in the day time in clear weather, when the rule of going to the right, &c., applies, and is well understood.

2. In the dark, when the rule as to lights prevails.

3. In the fog, when neither the rule as to course nor as to lights is of any use, and when all that can be done is to make a noise.

This third cause of collision, on our coast, is more prolific than either of the others, and the rule is of more importance.

In such cases the Courts have established a rule as to speed. *Bullock* v. *Steamer Lamar,* 8 Law Rep., 275; *Northern Indiana,* 16 Law Rep., 433; *Acker* v. *Ship Rainbow,* 14 Law Rep., 451.

And they have further decided that it is the duty of the steamer to blow her whistle, &c. *Steamer Bay State,* 1 Abbot's Adm. R., 235.

*Aaron Hayden,* for defendants, on exceptions, on the several points raised by him, cited the following authorities:— *Copeland* v. *Wadleigh,* 7 Greenl. 141; *Pike* v. *Warren,* 15 Maine, 390; *Hathaway* v. *Crosby,* 17 Maine, 448; *Jewett* v. *Lincoln,* 14 Maine, 116; *Freeman* v. *Rankin,* 23 Maine, 289; *McCrillis* v. *Harris,* 38 Maine, 566; *Brown* v. *Osgood,* 25 Maine, 505; *Storer* v. *Gowen,* 18 Maine, 174; *Morton* v. *Fairbanks,* 11 Pick. 368.

The opinion of the Court was drawn up by

MAY, J.— This is an action on the case, founded upon a collision between the plaintiff's schooner Hiram, and the defendants' steamer Admiral, which occurred in a fog, upon Passamaquoddy Bay, in a thoroughfare leading into the harbor of Eastport.

It is not denied that the Courts of common law have a concurrent jurisdiction with Courts of Admiralty in cases of this kind. If, however, a party elects the common law remedy,

he thereby voluntarily submits to the legal principles and modes of proceeding which prevail in the Courts affording that remedy. By such election, both parties become entitled to have the common law administered as it exists, and also to a trial by jury.

In the case before us, the general instructions which were given, so far as they went, are such as, under the finding of the jury, the plaintiff has no ground to complain of, nor does his counsel now raise any exceptions thereto. It may, perhaps, be found that the rule laid down by the presiding Judge in cases of mutual fault or negligence is the rule of the maritime code, and not of the common law. It is said by Parsons, in his work on Mercantile Law, p. 383, note 1, that " in Courts of common law, if both parties are in fault, the loss rests where it falls;" and the cases, *Vennall* v. *Garner*, 1 Crompt. & Mees., 21, *Rathburn* v. *Payne*, 19 Wend. 399, *Barnes* v. *Cole*, 21 Wend. 188, *Simpson* v. *Hand*, 6 Whart., 311, and *Kelly* v. *Cunningham*, 1 Cal., 365, are there cited to sustain the doctrine. In addition to these cases, we refer to *Carsley & al.* v. *White*, 21 Pick., 254, in which SHAW, C. J., instructed the jury that, " in case of collision, either at sea or in a harbor, to enable the plaintiffs to recover, it must appear that the accident was not caused by any negligence or want of skill on their part," and the correctness of this instruction appears to have been affirmed by the full Court. If, however, the presiding Judge, in the case before us, was in error in supposing the common law rule to be the same as that which prevails in Courts of Admiralty, the verdict cannot be disturbed for this cause, inasmuch as such a rule is more favorable to the plaintiff than to the other side, and the jury, under such instruction, must have found that, whether the plaintiff was in fault or not, the defendants, and those for whose acts they were by law responsible, were not. Under such circumstances, there is no ground upon which the defendants can be held liable.

It appears, however, that the Judge was requested to instruct the jury, " if they should find that the persons in charge

of the steamer saw the schooner in season to notify her of their approach, by ringing the bell or blowing the whistle, before the schooner saw the steamer, and ·in consequence of neglecting to do so the collision occurred, then they were in fault, and the defendants should pay the damages, unless they should also find that the vessel was in fault for some other cause." This instruction was refused, and the Judge declined to say any thing specifically about the duty of the steamer to blow her whistle or ring her bell. It is now contended that this instruction, as matter of law, should have been given.

Our inquiry then is, is this requested instruction in accordance with the principles of the common law ? It by no means follows that such is the common law, even if it should appear that Courts of Admiralty and maritime jurisdiction have decided that proper care and prudence require that, under similar or the same circumstances stated in the request, it was the duty of a steamer to blow her whistle or ring her bell. The law· by which such courts are controlled may have its precise rules, by which to determine with accuracy a question of duty or fault, and by these rules the judgment of such courts may be bound. These rules may be such as commend themselves to judicial wisdom, and yet be no part of the common law. The rules of navigation and the usages of the sea, although they are important to be observed, and the neglect of them may go far to show a want of care or skill, are not regarded in this country, in our Courts of common law jurisdiction, so positive in their nature as to bind masters or owners, in all cases, with the force of law. Parsons' Mercantile Law, p. 384 and 385. These technical rules or usages of the sea as established or recognized by the maritime law, are important facts to be presented to a jury, without which it might be very difficult for them to determine whether due care and skill in most cases had been exercised, or not; but they are not rules of the common law, and cannot properly be given to the jury as such.

At common law, whether due care has been exercised or negligence exists is ordinarily a question of fact, depending

upon a great variety of circumstances. It is so in cases of collision of carriages traveling upon our highways; and the same principle applies to collisions upon navigable waters. The duty of the person driving the team, in one case, and of the master of the vessel, in the other, to exercise due care and skill, cannot be questioned as matter of law; and these cannot be exercised in cases where there is an unnecessary departure from the laws and the usages which prevail in the case. These laws, if they exist by statute or at common law, may be given by the Court to the jury as such, but if they are laws of another jurisdiction, whether foreign, maritime, or any such as do not prevail as law without proof in the jurisdiction where the cause is being tried, then the presiding Judge cannot properly be called upon to state them as rules absolutely existing for the guidance of the jury. If they are not admitted or conceded, they must be proved as other matters of fact.

It is the boast of the common law that questions of fact are for the jury, while the law only is for the Court. The common law scales by which the evidence is to be weighed, in cases like the one before us, is a jury of the vicinage, and their intelligence and honesty are to be the watchful guardians of the beam. Especially is the question for the jury in a case like that involved in the requested instruction before us. What common care and prudence required of the plaintiff, and of the defendants, at the time of the collision for which this suit was brought, and what amounted to negligence, depending, as it did, upon a great variety of facts and circumstances apparent in the case, was wholly for the jury. If the requested instruction had been given, the province of the jury would have been invaded. It is not the right of a party, in cases of this kind, to seize upon one, or two, or more of the facts bearing upon the question of fault, and ask the Court to rule upon their weight as evidence, or their effect. The question of fault in the persons having charge of the steamer depended, in some measure, upon many other circumstances disclosed in the evidence beside those stated in the request,

all which must necessarily be taken into consideration, in order to a just determination of the question involved. Among these circumstances may be mentioned the density of the fog, the speed of the steamboat, its position and proximity to the schooner, the bearing of the vessels toward each other, and the danger to be apprehended. To hold, as matter of law, as is now contended, that a steamboat which might first happen to see another vessel in season to do so, should, in all cases, by the blowing of her whistle or the ringing of her bell, notify such vessel of her approach before the other vessel should see the steamboat, or be chargeable with fault and the payment of damages unless the other vessel was in fault, and this, too, without any reference to the other existing circumstances in the case, would be, most manifestly, unjust. The common law has no such rule.

This case is not very much unlike the case of *Carsley & al.* v. *White,* before cited, 21 Pick. 254, in which it was held that whether common care and prudence required of the plaintiffs to have a light on their deck, and the omission to have it, amounted to negligence, must depend upon the darkness of the night, the number and situation of the vessels in the harbor, and all the other circumstances connected with the transaction, and that this was a question of fact within the province of the jury. The requested instruction was therefore rightly withheld.

Our next and only remaining inquiry is, whether the verdict is against evidence. Each party put in such evidence as was deemed desirable. The instructions to the jury were not unfavorable to the plaintiff, and none which were requested and could properly have been given were withheld. Able counsel upon both sides undoubtedly gave to the jury all the light which the rules and usages of the sea and the evidence before them could throw upon the case. The place of the collision, the deceptive nature and density of the fog at the time; the number and frequency of the vessels passing in the waters or thoroughfare where the steamer and schooner met; the speed with which each was moving, and their direction

Sawyer *v.* Eastern Steamboat Company.

with reference to each other; the force and direction of the wind; and all the facts and circumstances relating to the management and control of the steamboat, on the one side, and the schooner, on the other, together with evidence of all such usages of the sea as either party wished to put in, were presented to the jury; and they have come to the conclusion that the steamer was without fault, or that the collision was the result of inevitable accident. It is possible that a Court of Admiralty might have come to a different result. The cases cited by the plaintiff are most of them, if not all, cases in admiralty, and they show what degree of care was required by the maritime code, of steam and other vessels, under the circumstances of each particular case; and also, what, in the judgment of such Courts, amounts to negligence or fault. But none of these cases furnish an infallible rule for the case at bar. Every case must depend upon its own facts. It may be, too, that this Court, in view of all the facts in this case, would have come to a different conclusion than that to which the jury have arrived. But if this or any other Court would have decided differently in regard to the facts, still, if the jury have acted fairly, without bias or prejudice, passion or evident mistake, their verdict must stand. In view of all the evidence which the case presents, we are unable to discover any legal cause which authorizes us to deprive the defendants of the verdict which they have obtained. The plaintiff, having chosen his forum, must abide its result.

*Exceptions and motion overruled.*

TENNEY, C. J., and APPLETON, CUTTING, and DAVIS, J. J., concurred.